STATE OF CONNECTICUT *v.* LEOPOLD LACHOWICZ
(AC 23138)

Schaller, Mihalakos and Hennessy, Js.

Argued June 6—officially released September 2, 2003

*Scott Abkowicz*, deputy assistant public defender, for the appellant (defendant).

*Elizabeth Bodine*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Debra A. Collins*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Leopold Lachowicz, appeals from the judgment of the trial court revoking his probation and committing him to the custody of the commissioner of correction to serve the remaining seven years of his previously suspended sentence of incarceration. On appeal, the defendant claims that the court improperly (1) found that he had violated his probation, (2) found that the beneficial purposes of probation were no longer being served and (3) deprived him of a fair trial in violation of his due process rights. We affirm the judgment of the trial court.

The following facts are relevant to the defendant's appeal. On November 18, 1994, the defendant was convicted of sexual assault in the first degree in violation of General Statutes § 53a-70 and was sentenced to ten years of incarceration, suspended after three years, with a period of five years of probation. On December 31, 1996, the defendant began his probation. Five special conditions of probation were imposed on the defendant: (1) have no contact with the victim or the victim's family, (2) participate in a sex offender treatment pro-

gram (program), (3) maintain full-time employment, (4) provide restitution to the victim for any out-of-pocket expenses incurred as a result of the assault and (5) maintain support of his minor child.

On October 15, 1996, pursuant to his participation in a sex offender treatment program, the defendant signed a treatment contract with The Connection, Inc., and its special services center for the treatment of problem sexual behavior (special services). The relevant portions of the treatment contract included punctual attendance at all treatment sessions, unless granted permission from a staff member to be late or to miss a session; abstaining from committing any criminal offenses; refraining from behavior that adversely affects treatment; and full and active participation in treatment sessions. The contract also stated in relevant part: "I understand and agree that *any* violation of the conditions of this contract may be grounds for termination from the program at the discretion of the staff." (Emphasis added.)

On December 4, 2001, the defendant was discharged from the program for failure to abide by the terms of the treatment contract. On December 18, 2001, the defendant was charged with violation of probation pursuant to General Statutes § 53a-32 (a).[1] The application for an arrest warrant included the affidavit of Craig J. Hanson, the defendant's probation officer, which stated that the defendant had failed to attend nine group ses-

[1] General Statutes § 53a-32 (a) provides in relevant part: "[U]pon an arrest by warrant [for a violation of probation], the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation or conditional discharge, shall be advised by the court that such defendant has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in such defendant's own behalf."

sions in 2001 and provided medical excuses only for "less than one-half . . . ." The affidavit also stated that the defendant "disclosed that he had recently used prostitutes over the past several months" and had used those encounters "to counter his deviant fantasies over the course of his probation." The defendant also "admitted that he actively fantasizes around sexual contact with minors and visualizes these prepubescent contacts while engaging in sex acts with adult females." The affidavit further stated that the defendant had failed to complete homework assignments related to his treatment, such as an action plan related to high risk situations, and "has failed to consistently meet the expectations" of the program. On March 16, 2002, the defendant was arrested pursuant to a warrant.

On April 9, 2002, the court began a hearing to determine whether the defendant had violated his probation. Charles Shideler, a staff therapist with special services, testified that failure to abide by the conditions of the treatment contract could result in discharge from the program. He testified that the defendant had missed nine treatment sessions in violation of the contract. Shideler also stated that the defendant had failed to complete action plans, failed to complete homework and, in five years, had completed only one stage of the six stage program. According to Shideler, the defendant was still a high risk to the community and had not been rehabilitated in the program.

Hanson testified that the beneficial purposes of probation were no longer being served as to the defendant. Hanson testified that the twenty days remaining in the defendant's probation would not reduce his risk to the community because the defendant's "actions already with the prostitutes and fantasizing about having [and] visualizing sex with minors while having sex with prostitutes" was a "red flag" and might actually lead to the defendant's committing a crime against a child.

Following the presentation of the evidence and closing arguments, the court found that the defendant had violated the condition of probation requiring sex offender treatment and, thus, was in violation of his probation. As a result, the probation was revoked, and the court ordered the defendant to serve the remaining seven years of his sentence. This appeal followed.

I

The defendant first claims that the court improperly found that he had violated his probation. He argues that the state did not prove by a preponderance of the evidence that (1) he did not complete his homework and action plans for dealing with high risk situations he would encounter, (2) that he missed program classes in 2001 without a valid excuse and (3) that he violated a criminal law based on his admission that he had engaged the services of a prostitute.[2] We do not need to address that claim because the defendant waived it during the hearing.

At various times throughout the revocation of probation hearing, the defendant's attorney conceded that the defendant had violated his probation.[3] The defendant's attorney also stated that "the question, of course, Your

---

[2] The court was not required to find that the defendant had violated a criminal law by engaging the services of a prostitute. Hanson testified that the defendant knew that sexual activity with prostitutes, as an outlet for his fantasies involving sex with children, was behavior prohibited by his treatment contract. Collectively, the sex acts, the failure to attend treatment sessions, the failure to perform homework assignments and to complete action plans establish a material breach of his contract with special services. The breach of contract constituted the violation of probation, not the finding that the defendant had committed the crime of patronizing a prostitute in violation of General Statutes § 53a-83.

[3] The following colloquy occurred during closing arguments:

"The Court: [The defendant] is in violation of his probation. Even you can see that.

"[Defense Counsel]: Yes, Your Honor. There was a violation.

"The Court: So, we're talking about a probation violator.

"[Defense Counsel]: Correct. . . ."

Honor, is what is the remedy for *this violation*."
(Emphasis added.) Clearly, the defendant waived any
claim that he did not violate the terms of his probation.[4]

## II

The defendant next claims that the court improperly
found that the beneficial purposes of probation were
no longer being served. The defendant argues that the
evidence presented during the hearing was insufficient
for the court to conclude that his probation should be
revoked and that he should be sentenced to the time
remaining on his term of imprisonment. We disagree.

The defendant's claim involves the second compo-
nent of a probation revocation hearing. If the court
finds a violation of probation on the basis of the facts
presented in the first component, it then must "deter-
mine whether probation should be revoked because
the beneficial aspects of probation are no longer being
served." (Internal quotation marks omitted.) *State* v.
*Holmes*, 70 Conn. App. 4, 7, 796 A.2d 561 (2002). General
Statutes § 53a-32 (b) provides in relevant part: "No such
revocation [of probation] shall be ordered, except upon
consideration of the whole record and unless such viola-
tion is established by the introduction of reliable and
probative evidence and by a preponderance of the
evidence."

"When reviewing the second component of a proba-
tion revocation hearing, an appellate court must deter-
mine whether the trial court exercised its discretion
properly by reinstating the original sentence and order-

---

[4] The defendant could not prevail even if we reached the merits of his
claim that the court improperly found by a preponderance of the evidence
that he had violated the terms of his probation. The court heard evidence
that the defendant's dismissal from the sex offender treatment program
resulted from his exceeding the number of allowed unexcused absences,
his failure to complete homework assignments, his failure to complete action
plans and his failure to make progress during treatment.

ing incarceration. . . . In making this second determination [whether the defendant's probationary status should be revoked], the trial court is vested with broad discretion. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling . . . [and] [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender and the protection of society." (Citations omitted; internal quotation marks omitted.) *State* v. *Treat*, 38 Conn. App. 762, 770–71, 664 A.2d 785, cert. denied, 235 Conn. 920, 665 A.2d 907 (1995). We will review the record to determine whether the court abused its discretion when it determined that the beneficial purposes of probation were no longer being served and by imposing the remainder of the defendant's sentence of incarceration.

Shideler testified that the purpose of sex offender treatment is to "provide a client with the tools to interrupt deviant behavior and deviant arousal, and to develop appropriate skills or appropriate sexual interests or expressions of those interests that don't cause a person to commit criminal behavior." He stated that in the six months prior to the defendant's discharge from the treatment program, his behavior exemplified several risk factors that indicated that the defendant might commit a sex crime against a child in the future. Most notable here is the defendant's admission to Shideler that he had engaged in sexual activity with prostitutes intermittently throughout his probation. In addition, while having sex with the prostitutes, the defendant was fantasizing about having sex with children. Shideler testified that when asked how the defendant would fulfill his sexual needs if a prostitute was

not readily available, the defendant responded that he "didn't know." Shideler stated that this type of activity is a "very strong precursor to reoffending because it does not represent that [the defendant] has developed appropriate escape skills or tools to interrupt his arousal and process those feelings appropriately." Shideler stated that in his opinion, the "defendant represents a strong potential to re-offend in the community."

Hanson's testimony also was relevant to the court's determination to impose further incarceration. Hanson testified that the defendant's conduct thwarted the rehabilitative purpose of probation. He further testified that "a fantasy is one step leading to actually doing that offense" and that the defendant was a high risk to again engage in criminal behavior. Hanson stated that "a period of incarceration followed by a period of probation would be apropos" because the beneficial services of probation were not being served.

The record reveals that the defendant had failed to perform his obligations within the sex offender treatment program and was a high risk to engage in criminal behavior in the future. The court reasonably could have concluded that the beneficial purposes of probation were no longer being served. In addition, the court's remarks that it was "gravely concerned about the protection of society in this particular case, and I recognize, of course, the need to protect society [and] it's my opinion that you present a person of high risk to the . . . community," reveal that the court properly considered the beneficial purposes of probation prior to the revocation of that probation. The court did not abuse its discretion by revoking the defendant's probation.

### III

The defendant's third claim is that the court deprived the defendant of a fair trial in violation of his due process rights. We do not agree.

"Probation revocation proceedings fall within the protections guaranteed by the due process clause of the fourteenth amendment to the federal constitution. . . . That clause provides in relevant part: [N]or shall any State deprive any person of life, liberty or property, without due process of law . . . . U.S. Const., amend. XIV, § 1. Probation itself is a conditional liberty and a privilege that, once granted, is a constitutionally protected interest. . . . The revocation proceeding must comport with the basic requirements of due process because termination of that privilege results in a loss of liberty. . . . [T]he minimum due process requirements for revocation of [probation] include written notice of the claimed [probation] violation, disclosure to the [probationer] of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses in most instances, a neutral hearing body, and a written statement as to the evidence for and reasons for [probation] violation. . . . Despite that panoply of requirements, a probation revocation hearing does not require all of the procedural components associated with an adversarial criminal proceeding." (Citations omitted; internal quotation marks omitted.) *State* v. *Gauthier*, 73 Conn. App. 781, 789, 809 A.2d 1132 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003).

The defendant argues that the court did not follow proper procedure for finding a violation of probation because it did not state with specificity its rationale for the revocation of his probationary status.[5] The defen-

---

[5] In addition, the defendant argues that his due process rights were violated because the prosecutor improperly argued uncharged misconduct to the court during closing remarks. After a thorough examination of the transcript, we cannot find prosecutorial misconduct. During the defendant's direct examination, the defendant, himself, stated that he originally had been charged with sexually assaulting two girls, ages six and nine, respectively. In actuality, the defendant was charged with and convicted of sexually assaulting only the six year old. During closing argument, the prosecutor

dant failed to preserve his claim at trial and now requests that we review it under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] We find that the defendant's claim fails to satisfy the third prong of

clarified the defendant's own mischaracterization of the charges surrounding his conviction by reiterating three times that "the underlying offense was for the rape of a six year old."

The defendant's main contention concerns a colloquy between the prosecutor and the court regarding the nine year old girl mentioned by the defendant during direct examination and cross-examination. The prosecutor gave the court a copy of the presentence investigation report, which indicated that a sexual assault of an additional child had occurred around the same time as the offense against the six year old. To clarify for the court that the underlying charges were with respect to the six year old child only, the prosecutor stated: "The underlying [charge] was, in fact, only for the six year old, not the nine year old, which was actually disclosed later, as testified [about] by the defendant. . . . Although the defendant was under the impression that he was charged with the [assault of the] nine year old as well."

The court then inquired as to whether the defendant had been charged in the assault of the nine year old. The prosecutor answered: "Your Honor, it was not until this moment that I realized that. When he stated, and my notes are frantic and circled, stating that he has admitted to raping a nine year old child. We may have a statute of limitations problem. It was in 1994, and the child may have surpassed the age of sixteen." The prosecutor then continued her closing argument.

That response to a direct inquiry by the court cannot be construed as improper prosecutorial conduct because the prosecutor's remarks served to clarify the defendant's misstatement to the court. The prosecutor was indicating that the defendant had *not* been charged with respect to the nine year old. Because nothing in the record reveals prosecutorial misconduct, we do not address that claim.

[6] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Hobson*, 68 Conn. App. 40, 47, 789 A.2d 557, cert. denied, 260 Conn. 910, 796 A.2d 557 (2002).

*Golding.* The constitutional violation did not clearly exist, and the defendant was not deprived of a fair trial. See id.

The court did not abuse its discretion by failing to articulate the specific reasons on which the revocation of probation was based. As long as "the ultimate findings of the court, that there was a violation of a condition of probation and that probation should have been revoked, were reasonable . . . the court need not have made specific subsidiary findings of fact." *State* v. *Baxter*, 19 Conn. App. 304, 321, 563 A.2d 721 (1989).

The defendant further argues that his due process rights were violated because he was not provided an opportunity to present evidence and witnesses. Our review of the record reveals that the defendant was accorded a proper hearing within the requirements of § 53a-32.[7] During the evidentiary phase of the hearing, the state presented two witnesses, who were then cross-examined by the defendant. The defendant then testified as a witness during his defense. The defendant's contention that he was not provided with an opportunity to present witnesses to testify on behalf of his character is, therefore, completely unfounded.

After closing arguments by both attorneys, the court took a brief recess. The court then asked if the parties were ready for sentencing. The court then stated its finding that the defendant had violated his probation. Subsequently, both defense counsel and the defendant made arguments to the court. The court then asked: "Anything else?" The defendant replied: *"That's it.* Thank you." (Emphasis added.) Consequently, the defendant's contention that he did not have the opportunity to present witnesses to testify as to an appropriate sentence is equally unfounded.

---

[7] See footnote 1.

Finally, the court concluded the hearing by stating: "As I've already said, I find you in violation of your probation, and I have thoroughly reviewed the sentencing alternatives that are available to me and the record that you present with regard to your past convictions and your performance while a probationer, and it's my opinion that you present a person of high risk to the welfare of the community and to the safety of the community."

On the basis of our review of the transcript and the briefs, we conclude that the court conducted a probation revocation hearing that complied with the requirements of due process.[8] The defendant was afforded a full two part probation revocation hearing prior to having his probation revoked.

On the basis of the foregoing analysis, the finding of the court that the defendant was in violation of his probation for failing to complete a special condition of his probation was not clearly erroneous, the court did not abuse its discretion by revoking his probation and incarcerating him to complete the remainder of his sentence, and his due process rights were not violated.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] The defendant contends that he was not afforded a bifurcated hearing in which a violation of probation is found and then a separate hearing is held to determine if the beneficial purposes of probation are still being served. The defendant's attorney acknowledged that the defendant had violated his probation. See part I. The only issue before the court, therefore, according to the defendant's attorney, was whether the beneficial purposes of probation were still being served. The court, however, did make a separate finding that the defendant had violated his probation and then gave him an opportunity to be heard and to present evidence.