******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## STATE OF CONNECTICUT *v.* MARVIN OWENS
## (AC 46997)

Cradle, C. J., and Suarez and DiPentima, Js.

*Syllabus*

The defendant, who had been on probation in connection with his convictions, in two separate dockets, of violation of probation and interfering with an officer, appealed from the trial court's judgments revoking his probation and imposing a sentence of incarceration. He claimed, inter alia, that the court improperly denied his motion to dismiss, which alleged violations of his right to a speedy trial and of the 120 day guideline contained in the revocation of probation statute (§ 53a-32). *Held*:

The trial court's denial of the defendant's motion to dismiss was not clearly erroneous, as § 53a-32 (c) does not extend the right to a speedy trial to probation revocation proceedings, and the court found that the commencement of the hearing was tolled in light of the defendant's voluminous motion practice and the numerous files pending before the court.

The trial court did not abuse its discretion in waiting to rule on the defendant's request to represent himself, as the court reasonably waited to canvass the defendant for a period of approximately six weeks while a competency evaluation of the defendant was pending in another jurisdiction, and the delay in the court's canvass did not prejudice the defendant, who then represented himself at all critical stages of the proceedings.

The trial court's finding that the defendant violated his probation was supported by sufficient evidence, including testimony by the victim, which the court found to be highly credible.

The defendant could not prevail on his claim that his due process rights were violated as a result of prosecutorial impropriety, specifically, that the prosecutor failed to correct certain statements by the victim during her testimony, which the defendant alleged were false or misleading, as this court's review of the victim's testimony revealed that the defendant had not demonstrated that the state presented any material, false or substantially misleading testimony that the prosecutor failed to correct, the defendant's claims relied on documents that were not in evidence at the probation revocation hearing, and there was no reasonable likelihood that any allegedly false testimony could have affected the trial court's judgment.

Argued June 3—officially released September 30, 2025

*Procedural History*

Information, in each of two cases, charging the defendant with violation of probation, brought to the Superior

Court in the judicial district of Fairfield, where the court, *Hernandez, J.*, denied the defendant's motion to dismiss; thereafter, the case was tried to the court, *Hernandez, J.*; judgment in each case revoking probation, from which the defendant appealed to this court. *Affirmed.*

*Marvin Owens*, self-represented, the appellant (defendant).

*Meryl R. Gersz*, assistant state's attorney, with whom, on the brief, were *Joseph T. Corradino*, state's attorney, and *Maura Coyne*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SUAREZ, J. The self-represented defendant, Marvin Owens, appeals from the judgments of the trial court finding him in violation of the conditions of his probations and revoking his probations pursuant to General Statutes § 53a-32.[1] The defendant claims that (1) the court improperly denied his motion to dismiss, which alleged violations of his right to a speedy trial and of the 120 day guideline contained in § 53a-32, (2) the court violated his constitutional right to self-representation, (3) the court found that he violated the conditions of his probations on the basis of insufficient evidence, and (4) the state violated his due process rights by failing

---

[1] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. . . . Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. . . .

"(c) . . . Unless good cause is shown, a charge of violation of any of the conditions of probation or conditional discharge shall be disposed of or scheduled for a hearing not later than one hundred twenty days after the defendant is arraigned on such charge . . . ."

to correct false or misleading testimony.[2] We affirm the judgments of the court.

The following facts and procedural history are relevant to our resolution of this appeal. On September 7, 2021, the defendant was convicted of violation of probation in violation of § 53a-32 and sentenced to forty-four months of incarceration, execution suspended, and four years of probation. That same day, the defendant was convicted, under a separate docket, of interfering with an officer in violation of General Statutes § 53a-167a, and sentenced to one year of incarceration, execution suspended, and three years of probation. The sentences were to run consecutively. As a condition of his probations, the defendant was ordered to "not violate any criminal law of the United States, this state or any other state or territory." He also was prohibited from committing violence toward, threatening or harassing the victim, B.[3]

---

[2] We have reframed the defendant's claims, in some instance condensing closely related claims, to more accurately reflect the arguments in the defendant's brief. See, e.g., *Doe* v. *Quinnipiac University*, 218 Conn. App. 170, 173 n.4, 291 A.3d 153 (2023).

The defendant also asserts that the court (1) violated his equal protection rights, (2) exhibited judicial bias and failed to recuse itself, (3) improperly denied his motion to dismiss for lack of jurisdiction, and (4) improperly failed to provide a written statement setting forth its reasons for revoking his probation. The defendant's brief, which is confusing, repetitive, and disorganized, contains no meaningful analysis of these claims and, accordingly, we decline to review them as they are inadequately briefed. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *Y. H.* v. *J. B.*, 224 Conn. App. 793, 795–96 n.2, 313 A.3d 1245 (2024).

[3] Several protective orders naming B as the protected person previously had been issued against the defendant, certified copies of which were admit-

Subsequently, the defendant was charged under both dockets with violation of probation on the basis of his arrest on charges that stemmed from an incident on January 10, 2022, in which the defendant allegedly assaulted B.[4] On May 2 and 12, 2023, the court held a hearing on the violation of probation charges. On the first day of the hearing, the defendant moved to dismiss the violation of probation charges on the ground that the hearing was being held more than 120 days after his arraignment without good cause. Additionally, the defendant filed a written motion for a speedy trial and a motion to dismiss that also raised his speedy trial claim. The court denied the defendant's motion to dismiss, noting that the defendant had several pending files, and that he had appeared before the court "numerous times with respect to various motions that [he had] filed, plea discussions that were had, plea offers . . . giving you time to consider those plea offers. All of that time tolls the running of these clocks, speedy trial and the 120 days."

At the hearing, the state presented the testimony of B. B testified that, on January 10, 2022, she went with

ted into evidence. In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[4] The defendant was subsequently convicted, following a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), violation of a protective order, and unlawful restraint in the first degree in violation of General Statutes § 53a-95 in relation to the January 10, 2022 incident. See *State* v. *Owens*, Superior Court, judicial district of Fairfield, Docket No. CR-22-0344779-T. The defendant appealed the judgment of conviction, and that appeal is pending before this court. See *State* v. *Owens*, Connecticut Appellate Court, Docket No. 47893 (appeal filed August 8, 2024). Because the defendant's appeal from that judgment remains pending, "no portion of his challenge to the court's finding in the present case that he violated his probation is moot." *State* v. *Sykes*, 232 Conn. App. 753, 762 n.4, 337 A.3d 1174 (2025), petition for cert. filed (Conn. June 16, 2025) (No. 240400).

the defendant to his home in Bridgeport. She and the defendant started arguing and things started "escalating." B then "took [the defendant's] phone to call 211, because he always breaks [her] cell phone . . . [and] they told [her] to get a ride to the Bridgeport train station and that they were gonna send me an Uber and place me in a hotel." The defendant agreed to drive her to the Bridgeport train station. B testified that the defendant pulled over and got out of the car, after which time she heard glass breaking. She testified that the defendant got into the car and began striking her with a broken glass bottle and punching her. She stated that the defendant restrained her arm as they proceeded toward the highway, and, after she grabbed the steering wheel, the defendant threw her out of the vehicle. Photographs depicting B's injuries were admitted into evidence.

The state also presented testimony from Justin Quick, the defendant's probation officer, who testified concerning the conditions of the defendant's probation. Quick testified that he prepared the violation of probation warrants in the present case on the basis of the defendant's arrest on new charges pending in four dockets. A copy of the arrest warrant application for the violation of probation charges was also admitted into evidence, which referenced the defendant's arrest on January 13, 2022, on charges of, inter alia, assault in the first degree. Documents were introduced into evidence establishing the conditions of the defendant's probation, including that he not violate any criminal law of this state, the United States or any other state or territory, and that he refrain from violence, threats or harassment toward B. The state also offered the testimony of Gregory Sperling, the supervisor of the Office of Adult Probation in Milford, who testified that he had reviewed the written conditions of probation with the defendant

personally on October 12, 2021, at which time the defendant signed those written conditions. The defendant did not present any witnesses.

On September 12, 2023, the court orally ruled that the defendant violated his probation. The court based its decision, inter alia, on B's testimony relating to the January 10, 2022 incident in which he assaulted her. The court found that B's testimony was "highly credible." The court concluded that "[i]t's clear to the court that [the defendant] is a danger to the community and confinement is appropriate for the violations of probation." Accordingly, the court revoked the defendant's probation in both cases and sentenced him to forty-four months of incarceration. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion to dismiss, which alleged that the court violated (1) his right to a speedy trial under the sixth amendment to the United States constitution and (2) the 120 day guideline contained in § 53a-32. We are not persuaded.

We set forth the well settled standard of review and the following legal principles. "[O]ur review of the trial court's ultimate legal conclusion and resulting [denial] of [a] motion to dismiss will be de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous. . . . The determination of whether a defendant has been denied his right to a speedy trial is a finding of fact, which will be reversed on appeal only if it is clearly erroneous. . . . The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts." (Citation omitted; internal quotation

marks omitted.) *State* v. *Griffin*, 220 Conn. App. 225, 230, 297 A.3d 1056 (2023).

"The sixth amendment guarantee of a speedy trial is a fundamental right applicable to the states through the fourteenth amendment to the United States constitution. . . . This right also is guaranteed by the constitution of Connecticut, article first, § 8."[5] (Internal quotation marks omitted.) Id., 234 n.3. "[I]t is well established [however] that a probation revocation proceeding is not a criminal proceeding but is instead more akin to a civil proceeding." (Internal quotation marks omitted.) *State* v. *Dudley*, 332 Conn. 639, 648, 212 A.3d 1268 (2019). The United States Supreme Court "has never held . . . that a prisoner subject to a [probation violation] detainer has a constitutional right to a speedy [probation revocation] hearing." *Carchman* v. *Nash*, 473 U.S. 716, 731 n.10, 105 S. Ct. 3401, 87 L. Ed. 2d 516 (1985).

Section 53a-32 (c) provides in relevant part: "Upon notification by the probation officer of the arrest of the defendant or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. . . . Unless good cause is shown, a charge of violation of any of the conditions of probation or conditional discharge shall be disposed of or scheduled for a hearing not later than one hundred twenty days after the defendant is arraigned on such charge . . . ." Section 53a-32 (c) provides a guideline for the scheduling of a probation revocation hearing. It does not, however, extend the right to a speedy trial

---

[5] The sixth amendment provides in relevant part that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const., amend. VI. Because the defendant has not set forth a separate analysis of his claim under the Connecticut constitution, we address his claim only under the sixth amendment to the federal constitution. See, e.g., *State* v. *Griffin*, supra, 220 Conn. App. 234 n.3.

to probation revocation proceedings. See *State* v. *Kelley*, 164 Conn. App. 232, 240–41, 137 A.3d 822 (2016) (legislative history of § 53a-32 (c) demonstrated that 120 day provision was intended to serve as goal, not directive), aff'd, 326 Conn. 731, 167 A.3d 961 (2017); see also *State* v. *Smith*, 178 Conn. App. 715, 724, 177 A.3d 593 (2017), cert. denied, 328 Conn. 906, 177 A.3d 564 (2018).[6]

The defendant argues that the court violated his speedy trial rights by holding the probation revocation hearing more than 120 days after his arraignment. The foregoing case law, however, clearly establishes that the right to a speedy trial does not extend to probation revocation proceedings and that the 120 day provision contained in § 53a-32 (c) is a guideline for the scheduling of a probation revocation hearing, not a directive. Moreover, the court found that the commencement of the hearing was tolled in light of the defendant's voluminous motion practice and the numerous files pending before the court. We cannot conclude that this finding was clearly erroneous. See, e.g., *Antrum* v. *State*, 185 Conn. 118, 122, 440 A.2d 839 (1981) (trial court's tolling period was reasonable because termination of tolling period "was entirely within the control of the defendant"). Accordingly, we reject the defendant's first claim.

II

The defendant next claims that the trial court violated his right to self-representation as guaranteed by the

_____

[6] In *Kelley*, this court referenced the following legislative history in support of the conclusion that § 53a-32 (c) does not create a right to a speedy trial in probation revocation proceedings: "Representative Michael P. Lawlor . . . distinguished the 120 day limitation from 'the speedy trial mechanism,' noting that 'the speedy trial is a right. . . . [T]his [120 day limitation] is not the same thing, this is basically a guideline, [a] goal being articulated by the [l]egislature imposed on the judge really to bring a case to hearing.' " (Citation omitted.) *State* v. *Kelley*, supra, 164 Conn. App. 240.

sixth amendment to the United States constitution.[7]
Specifically, the defendant argues that the court caused
structural error by impermissibly delaying its canvass
of him with respect to his request to represent himself.
We conclude that the court did not violate the defen-
dant's right to self-representation.

The following additional facts and procedural history
are relevant to our discussion of this claim. The court
ordered that a public defender be appointed to repre-
sent the defendant at his arraignment on January 14,
2022. Although the defendant indicated that he did not
want a public defender, he did not request to proceed as
a self-represented party on that date.[8] A public defender
entered an appearance on the defendant's behalf on
March 30, 2022. On April 4, 2022, the defendant stated
to the court: "I waive my right to counsel, so she's
withdrawn." The court informed the defendant that it
could not yet rule on the defendant's request to repre-
sent himself because defense counsel had not filed a
motion to withdraw her appearance and the defendant
had not yet been canvassed. The court also stated that
it would mark off certain motions filed by the defendant
without prejudice and that, "if it turns out that you're

---

[7] This right applies to the states through the due process clause of the
fourteenth amendment to the federal constitution. See, e.g., *Pointer* v. *Texas*,
380 U.S. 400, 406, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

[8] We reject the defendant's claim that the court violated his due process
rights by failing to make an on-the-record inquiry regarding his representa-
tion pursuant to Practice Book § 37-3. In addition to being inadequately
briefed; see footnote 2 of this opinion; the record reveals that, when the
defendant stated that he did not want a public defender to represent him,
the court replied that, "if you decide that you're going to hire someone else,
you can let me know."

To the extent that the defendant also asserts that the court made an
inadequate investigation of his indigency, we disagree. The public defender
stated to the court at the defendant's arraignment that "[the defendant] did
not want to speak to us . . . I do believe he's eligible, so I'll ask for full
appointment." The court reasonably granted the public defender's request
on the basis of those representations.

going to represent yourself pro se, I'll hear all your motions . . . ."

On August 10, 2022, the court stated on the record that a competency evaluation pursuant to General Statutes § 54-46d had been filed in the judicial district of Ansonia-Milford, and that the evaluation was still pending. The court stated at that time that "[w]e can't have any meaningful discussion on the cases until that is completed." On the next scheduled court date, September 23, 2022, defense counsel represented to the court that the defendant was found competent by the court in Milford and that the defendant still wanted to represent himself in the present case. The court canvassed the defendant and granted the defendant's request to represent himself, finding that the defendant's waiver was knowing and voluntary.[9] The court also appointed standby counsel to assist the defendant. See Practice Book § 44-4. The defendant represented himself at all times thereafter, including at the probation revocation hearing.

We first set forth the relevant legal principles governing our review of this claim. "Given the trial court's superior position to observe the defendant and to control the proceedings before it, we review a trial court's decision with respect to a defendant's request to represent himself for an abuse of discretion. . . .

"Both the federal constitution and our state constitution afford a criminal defendant the right to [forgo] the assistance of counsel and to choose instead to represent himself or herself at trial. . . . *Godinez* v. *Moran,* 509 U.S. 389, 396, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993) (defendant must be found competent to waive right to assistance of counsel).

---

[9] The defendant has not challenged the adequacy of the court's canvass in this appeal.

"Once a defendant invokes his right to self-represen-
tation, a trial court must canvass that defendant to
determine if the defendant's invocation of that right
and the corollary waiver of the right to counsel were
both voluntary and intelligent. . . . A court must
indulge in every reasonable presumption against the
waiver or forfeiture of fundamental constitutional
rights, and must not presume acquiescence in the loss
of fundamental rights. . . . Forcing a lawyer on an
unwilling defendant is contrary to the basic right to
defend oneself. . . . As such, the improper denial of
the right to self-representation is a structural error,
requiring a new trial. . . . Thus, a trial court can deny
a defendant's timely request to represent himself (1)
when a defendant is not competent to represent himself,
(2) when a defendant has not knowingly and intelli-
gently waived his right to the assistance of counsel, (3)
when the request is made for dilatory or manipulative
purposes, or (4) because the defendant's behavior is
disruptive or obstructive." (Citations omitted; footnotes
omitted; internal quotation marks omitted.) *State* v. *Pet-
teway*, 351 Conn. 682, 691–93, 332 A.3d 196 (2025).

In the present case, we conclude that the court did not
abuse its discretion by waiting to rule on the defendant's
request to represent himself until September 23, 2022.
On August 10, 2022, the court was made aware that a
competency evaluation of the defendant was pending
in another jurisdiction.[10] The court reasonably waited
to canvass the defendant for a period of approximately
six weeks while the evaluation was pending. C.f., e.g.,
*United States* v. *Barnes*, 693 F.3d 261, 274 (2d Cir.
2012) (noting, in concluding that defendant abandoned
request to represent himself, that trial court had
declined to rule on defendant's request until pending

---

[10] The record before us does not reveal the exact dates that the competency
evaluation was requested and completed.

competency evaluation was completed), cert. denied, 568 U.S. 1113, 133 S. Ct. 917, 184 L. Ed. 2d 704 (2013).

The court's brief delay in ruling on the defendant's motion was in furtherance of its obligations under Practice Book § 44-3, which provides in relevant part that "[a] waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant . . . (1) [h]as been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled; (2) [p]ossesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself; (3) [c]omprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and (4) [h]as been made aware of the dangers and disadvantages of self-representation."

Although the court did not immediately consider the defendant's request to represent himself, the delay in doing so did not prejudice him. After the court canvassed the defendant, he represented himself at all critical stages of the proceedings. Indeed, the defendant has not pointed to any part of the proceedings that was impacted from March 30 until September 23, 2022. Cf., e.g., *State* v. *Joseph A.*, 336 Conn. 247, 266–67, 245 A.3d 785 (2020) (notwithstanding defendant's claim that he was improperly canvassed, defendant did not point to "any aspect of the trial proceeding that was impacted by the defendant's self-representation during the initial plea negotiation with the state"); *State* v. *Cushard*, 328 Conn. 558, 583–85, 181 A.3d 74 (2018) (concluding that, even if absence of counsel resulted from constitutionally inadequate waiver, any error was harmless because hearings that occurred during time that defendant was self-represented did not contribute to verdict). Therefore, we reject the defendant's second claim.

## III

The defendant's third claim is that there was insufficient evidence that he violated his probation.[11] We disagree.

The following principles are relevant to our review of the defendant's claim. "The law governing the standard of proof for a violation of probation is well settled. . . . [A]ll that is required in a probation violation proceeding is enough to satisfy the court within its sound judicial discretion that the probationer has not met the terms of his probation. . . . [E]vidence is not insufficient [merely] because it is conflicting or inconsistent. [The fact finder] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject. . . . A challenge to the sufficiency of the evidence is based on the court's factual findings. The proper standard of review is whether the court's findings were clearly erroneous based on the evidence. . . . A court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficient evidence when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . [A] trial court may not find a violation of probation unless it finds that the

---

[11] Although it appears that the defendant's statement of issues, which is not a model of clarity, does not distinctly raise this claim, we address it because both parties have fully briefed the issue. See, e.g., *Whisper Wind Development Corp.* v. *Planning & Zoning Commission,* 32 Conn. App. 515, 523–24, 630 A.2d 108 (1993) (addressing issue not raised in statement of issues when claim was fully briefed), aff'd, 229 Conn. 176, 640 A.2d 100 (1994).

predicate facts underlying the violation have been established by a preponderance of the evidence at the hearing—that is, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . This court has observed that to support a judgment of revocation of probation, [o]ur law does not require the state to prove that all conditions alleged were violated; it is sufficient to prove that one was violated." (Citations omitted; internal quotation marks omitted.) *State* v. *Sykes*, 232 Conn. App. 753, 769–70, 337 A.3d 1174 (2025), petition for cert. filed (Conn. June 16, 2025) (No. 240400).

In the present case, there was sufficient evidence in the record to support the court's finding that the defendant violated his probation. The court heard B's testimony recounting the January 10, 2022 incident, including that the defendant struck B with a broken glass bottle, punched her, restrained her, and threw her out of a moving vehicle. The court also had before it photographs depicting B's injuries. The court found B's testimony to be "highly credible . . . ." The defendant argues that the court's factual findings were based on B's "perjured" testimony.[12] The defendant essentially

___

[12] In the section of his brief discussing his sufficiency claim, the defendant asserts that the court failed to provide a written statement of its decision and that the transcript of the proceedings did not put forth the basis of its ruling. To the extent that the defendant intends to raise a separate claim regarding the clarity of the court's ruling, we conclude that this claim is inadequately briefed. See footnote 2 of this opinion. To the extent that the defendant intends to argue that the court improperly failed to provide a written statement in support of his sufficiency claim, we disagree. As long as "the ultimate findings of the court, that there was a violation of a condition of probation and that probation should have been revoked, were reasonable . . . the court need not have made specific subsidiary findings of fact." (Internal quotation marks omitted.) *State* v. *Lachowicz*, 79 Conn. App. 199, 209, 829 A.2d 874, cert. denied, 266 Conn. 921, 835 A.2d 61 (2003). Moreover, in the present case, it is clear that the court based its finding that the

asks us to overturn the court's credibility determinations, which we decline to disturb on appeal. See, e.g., *State* v. *Campbell*, 61 Conn. App. 99, 102, 762 A.2d 12 (2000) ("[a]s a reviewing court, we may not retry the case or pass on the credibility of witnesses"), cert. denied, 255 Conn. 934, 767 A.2d 105 (2001). From the evidence presented, the court reasonably could have concluded that the state established, by a preponderance of the evidence, that the defendant violated the conditions of his probation by violating a law of this state on January 10, 2022, and by committing violence toward B. The defendant's third claim therefore fails.

IV

The defendant's final claim is that his due process rights were violated as a result of prosecutorial impropriety.[13] Specifically, the defendant argues that the prosecutor failed to correct certain statements made by B during her testimony, which he alleges were false and/or misleading. We are not persuaded.

We first set forth relevant legal principles. "Whether a prosecutor knowingly presented false or misleading testimony presents a mixed question of law and fact, with the [trial] court's factual findings subject to review for clear error and the legal conclusions that the court drew from those facts subject to de novo review." *Greene* v. *Commissioner of Correction*, 330 Conn. 1, 14, 190 A.3d 851 (2018), cert. denied, 586 U.S. 1167, 139 S. Ct. 1219, 203 L. Ed. 2d 238 (2019). As a general proposition, "[d]ue process is . . . offended if the state, although not soliciting false evidence, allows it

---

defendant violated his probation on the credibility of the witnesses, specifically, B.

[13] This claim was preserved for appeal by the defendant's argument before the trial court that the state improperly presented "perjured testimony [on] May 2, which was extensive," and that, in failing to correct this testimony, the state engaged in prosecutorial misconduct.

to go uncorrected when it appears. . . . This constitutional safeguard prohibits not only the solicitation of false evidence, which is objectively untruthful, but the solicitation of evidence that substantially mischaracterizes facts and, thus, has a tendency to mislead the finder of fact. . . . .

"The rules governing our evaluation of a prosecutor's failure to correct false or misleading testimony are derived from those first set forth by the United States Supreme Court in *Brady* v. *Maryland*, [373 U.S. 83, 86–87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)] . . . [in which] the court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process [when] the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the [prosecutor]. . . . The United States Supreme Court also has recognized that [t]he [fact finder's] estimate of the truthfulness and reliability of a . . . witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend. . . . Accordingly, the *Brady* rule applies not just to exculpatory evidence, but also to impeachment evidence . . . which, broadly defined, is evidence having the potential to alter the [fact finder's] assessment of the credibility of a significant prosecution witness." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Ayuso* v. *Commissioner of Correction*, 215 Conn. App. 322, 340–42, 282 A.3d 983, cert. denied, 345 Conn. 967, 285 A.3d 736 (2022). "The phrase substantially misleading describes testimony that, although made in good faith, is untrue in a manner that should be obvious to the state. . . . False testimony, by contrast, occurs when the prosecutor knows that a state witness has committed perjury." (Citation omitted; internal quotation marks omitted.) *State* v. *Johnson*, 345 Conn. 174, 205, 283 A.3d 477 (2022).

First, our review of B's testimony at the probation revocation hearing reveals that the petitioner has not demonstrated that the state presented any material, false, or substantially misleading testimony that the prosecutor failed to correct.[14] B's testimony is the only testimony that the defendant claims was false and/or misleading, and the court found that B's testimony was "highly credible." As stated previously, it is not the role of this court to "second-guess the credibility determinations made by the trial court." (Internal quotation marks omitted.) *Young* v. *Commissioner of Correction*, 219 Conn. App. 171, 187, 294 A.3d 29, cert. denied, 347 Conn. 905, 297 A.3d 567 (2023).

B testified at the probation revocation hearing that, after the defendant exited his vehicle, she heard glass shatter. The defendant attempts to establish that this testimony was false, relying on an incident report and warrant application in which B allegedly indicated that she heard glass shatter at the defendant's house, before she and the defendant entered his vehicle. Neither of those documents was in evidence and, therefore, we do not consider them. See footnote 14 of this opinion. Even if that evidence were properly before the court, mere inconsistencies in a witness' testimony do not equate to false testimony or perjury. See, e.g., *State* v. *Gradzik*, 193 Conn. 35, 42 n.10, 475 A.2d 269 (1984) ("Not every inconsistency constitutes a falsehood.

---

[14] We agree with the state's observation that, in support of his claim, the defendant has submitted voluminous documents that were not admitted as evidence at the probation revocation hearing. We decline to consider any evidence that was not before the court at the probation revocation hearing. See, e.g., *Dushay* v. *Southern Connecticut Hockey League, LLC*, 234 Conn. App. 609, 612 n.3,      A.3d      (2025). "A reviewing court cannot go beyond the proper record before it in the determination of issues presented on appeal. . . . It is axiomatic that this court does not take evidence and does not make factual determinations." (Citation omitted; internal quotation marks omitted.) *State* v. *Dyous*, 153 Conn. App. 266, 278 n.10, 100 A.3d 1004 (2014), appeal dismissed, 320 Conn. 176, 128 A.3d 505 (2016).

Claiming perjury, with nothing more, is inappropriate.”); see also *United States* v. *Josephberg*, 562 F.3d 478, 494 (2d Cir.) (“[d]ifferences in recollection do not constitute perjury . . . and when testimonial inconsistencies are revealed on cross-examination, the [fact finder] [i]s entitled to weigh the evidence and decide the credibility issues for itself” (citation omitted; internal quotation marks omitted)), cert. denied, 558 U.S. 965, 130 S. Ct. 397, 175 L. Ed. 2d 302 (2009).

The defendant also challenges several statements made by B on cross-examination. The defendant extensively questioned B regarding certain prior incidents that did not pertain to the January 10, 2022 incident. Although the defendant asserts that B's responses to his questions were false, the only evidence he has presented to refute her testimony are documents that were not in evidence. For example, the defendant asked B about a prior incident in July, 2021, and inquired as to whether B had “made a report that [the defendant] was to shoot your male companion in the head.” B denied knowledge of this incident. B also denied ever “plac[ing] a claim . . . [that was] found to be untrue.” The defendant asserts that B testified falsely with respect to a prior accusation she made that the defendant had sexually assaulted her and with respect to a prior incident involving B that occurred at the Superior Court in the judicial district of Ansonia-Milford. He also claims that B offered perjured testimony by denying that she had ever tried to harm herself. Finally, he argues that B testified falsely by denying that she had spoken with the defendant's son in February, 2022. The defendant's arguments amount to mere conclusory assertions that B's statements were false. The majority of B's allegedly false statements were elicited on cross-examination by the defendant and involved issues that were not relevant to the event that led to the filing of the violation of probation charges. We, therefore, are not convinced by

the defendant's assertions that B's testimony pertaining to the incident that led to the allegation that he violated the conditions of his probations was false or substantially misleading. See, e.g., *Young* v. *Commissioner of Correction*, supra, 219 Conn. App. 195–96.

Second, we agree with the state that, even if we were to conclude that the portions of B's testimony that the defendant has challenged were false or substantially misleading, the defendant is unable to demonstrate that the prosecutor's failure to correct the statements was fundamentally unfair because "there is no reasonable likelihood that the false testimony could have affected the judgment of the [finder of fact]." *Ayuso* v. *Commissioner of Correction*, supra, 215 Conn. App. 345. As stated previously, most of the challenged statements were not relevant to any material issue in the case, and, instead, concerned prior, unrelated incidents between B and the defendant.[15] The only challenge that the defendant makes to B's testimony relating to the January 10, 2022, incident is her statement regarding the timing of when she heard glass shatter. The defendant challenges this testimony with documents that were not properly before the court. Moreover, any mere inconsistencies in B's memory regarding the incident were wholly within the province of the trial court, as the finder of fact, to weigh. As stated previously, the court's finding that B's testimony was "highly credible" is not one we disturb on appeal. "As the sole finder of fact in the probation revocation proceeding . . . the court was entitled to arrive at its own conclusion regarding the witnesses' credibility and what weight to afford their testimony." (Internal quotation marks omitted.) *State* v. *Blake*, 108 Conn. App. 336, 343, 947 A.2d 998, aff'd,

---

[15] Indeed, the court noted during the defendant's cross-examination that "none of this is actually relevant to anything that [the prosecutor] went into on direct. Ordinarily, I would sustain objections to your questions, sir. But, I'm gonna give you a little bit of leeway, inasmuch as you're not an attorney."

289 Conn. 586, 958 A.2d 1236 (2008). Even if B was mistaken about the timing of when she heard glass shattering, we cannot conclude that such a mistake would have affected the court's judgment with respect to her testimony regarding the incident as a whole. In light of the foregoing, we conclude that the defendant has not demonstrated that his due process rights were violated by the prosecutor's purported failure to correct B's testimony.

The judgments are affirmed.

In this opinion the other judges concurred.